# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 08-3505

_____

Ruth L. Jobe,

              Appellant,

      v.

Medical Life Insurance Company,
Now known as Fort Dearborn Life
Insurance Company,

              Appellee.

*
*
*
*       Appeal from the United States
*       District Court for the
*       Western District of Missouri.
*
*         [PUBLISHED]
*
*
*

_____

Submitted: June 10, 2009
Filed: March 19, 2010

_____

Before BYE, HANSEN, and BENTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

Ruth L. Jobe appeals the district court's ruling, on cross-motions for summary judgment, rejecting her challenge of the denial of her claim for long-term disability benefits. Jobe appeals both the district court's holding that the plan administrator was entitled to discretion in adjudicating her claim and the court's holding that the administrator did not abuse its discretion. We agree that the plan administrator was not entitled to discretion, and we therefore reverse the district court's grant of

summary judgment and remand for the district court to review the administrator's decision *de novo*.

I.

Jobe was employed by Lake Regional Health System as a medical transcriptionist, and she became eligible for disability benefits under an insurance policy issued by Fort Dearborn Life Insurance Company (Fort Dearborn).[1] The parties agree that the Fort Dearborn policy is part of a health and welfare plan ("the plan") that is subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA).

As required by ERISA, 29 U.S.C. § 1102(a)(1), the plan is in writing. As is often the case with ERISA plans, the plan is embodied in more than one document. See Admin. Comm. of the Wal-Mart Stores, Inc. v. Gamboa, 479 F.3d 538, 542 (8th Cir. 2007). The first plan document, called the Group Insurance Policy or the "policy," defines key terms and explains the benefits of the plan. The policy contains the following provision, which Fort Dearborn labels an "integration" clause:

> COMPLETE CONTRACT - POLICY CHANGES
> 1. This policy is the complete contract. It consists of:
>     a. all of the pages;
>     b. the attached Application of the policyholder;
>     c. the participating employers' Applications for Group Voluntary benefits; or
>     d. each Employee's application for insurance (Employee retains his own copy).

---

[1]As indicated in the caption, Fort Dearborn was formerly known as Medical Life Insurance Company.

2. This policy may be changed in whole or in part. Only an officer or a registrar of the Company can approve a change. The approval must be in writing and endorsed on or attached to this policy.
3. Any other person, including an agent, may not change this policy or waive any part of it.

(J.A. vol. II at 22.)  The next clause of the policy informs the policyholder that the insurer "will provide a Certificate to the participating employer for delivery to each insured.  If the terms of a Certificate and this policy differ, this policy will govern." Id.

The certificate of coverage was provided to Jobe as part of a document titled "Voluntary Long-Term Disability Insurance; Employee Benefit Booklet." (Id. at 28.) The Employee Benefit Booklet describes the coverage provided by the policy. Appended to the Employee Benefit Booklet is a page titled "ERISA Information Statement." (Id. at 39.)  The ERISA Information Statement provides:

> The benefits described in your certificate and this ERISA Information Statement (collectively the "Summary Plan Description" a/k/a the SPD) are insured by a Policy issued by Medical Life Insurance Company. This SPD describes the provisions of the Plan in effect as of the Effective Date of the Policy. . . .  In the case of any item not covered by the SPD, or in the event of any conflict between the SPD and the Policy, the Plan will always control. . . .  Your right to any benefit depends on the actual facts and terms and conditions of the particular Plan; no rights accrue by reason of or arising out of any statement shown in or omitted from, this SPD.

(Id.) The ERISA Information Statement also states that, "The Plan Administrator has full discretionary authority and control over the Plan." (Id.) No such grant of discretion appears in the policy.

While Jobe was enrolled in the health and welfare plan, she complained of numerous physical ailments and eventually ceased working as a medical transcriptionist. She filed a claim seeking long-term disability benefits. Fort Dearborn employed a company named Disability RMS ("DRMS"), a third party administrator, to process the claim. DRMS collected medical records from Jobe's medical providers and engaged multiple health care professionals, including three physicians and a vocational consultant, to review the record and to evaluate Jobe's claim.

Ultimately, DRMS denied the claim and Jobe filed this lawsuit. The lawsuit asserts that Fort Dearborn wrongfully denied Jobe benefits under the long-term disability policy, in violation of ERISA. In the district court, both parties moved for summary judgment. The district court held that the plan administrator's decision to deny benefits was subject to review for an abuse of discretion. Finding no abuse of discretion, the district court granted summary judgment in favor of Fort Dearborn. Jobe appeals.

II.

"We review *de novo* the district court's summary judgment ruling and whether the district court applied the appropriate standard of review to the administrator's decision." Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 580 (8th Cir. 2008) (citations omitted). The district court reviews the administrator's decision for an abuse of discretion only "when an ERISA plan grants discretionary authority to the plan administrator to determine eligibility for benefits." Id. (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Jobe argues the district court should

have applied a *de novo* standard of review because the plan does not vest the plan administrator with the power to exercise discretionary authority in making benefits determinations.[2] We agree.

## III.

The dispute over the standard of review arises from the parties' conflicting conclusions regarding the legal effects of the two documents that comprise the ERISA-governed health and welfare plan. The policy is silent regarding the plan administrator's discretion to determine eligibility for plan benefits, while the summary plan description purports to grant such discretion. Jobe essentially argues that the summary plan description—granting discretion where the policy is silent—amounts to an unauthorized amendment of the policy in contravention of the procedures for amendment laid out by the policy itself. The district court rejected Jobe's argument, apparently favoring Fort Dearborn's proffered rationale that the summary plan description is part of the ERISA plan documents, so no formal amendment was necessary for the summary plan description to control.

Fort Dearborn's argument is premised upon this court's statement that summary plan descriptions "are considered part of the ERISA plan documents." Jensen v. SIPCO, Inc., 38 F.3d 945, 949 (8th Cir. 1994), cert. denied, 514 U.S. 1050 (1995). To be sure, we have noted on more than one occasion that summary plan descriptions form part of the written documents required by ERISA. See Gamboa, 479 F.3d at 544; Hughes v. 3M Retiree Med. Plan, 281 F.3d 786, 790 (8th Cir. 2002); Barker v. Ceridian Corp., 122 F.3d 628, 633 (8th Cir. 1997); Jensen, 38 F.3d at 949. Although Fort Dearborn contends that the summary plan description does not conflict with the

_____

[2]Jobe also argues that the abuse of discretion standard of review is not applicable because an inherent conflict of interest existed and procedural irregularities occurred, demanding the less deferential, *de novo* standard of review. In light of our conclusion that the plan does not grant discretion, we do not address this issue.

policy, the company attempts to bolster the importance of the summary plan description by pointing out that we have held that "[a summary plan description] provision prevails if it conflicts with a provision of a plan." Jensen, 38 F.3d at 952.

As Fort Dearborn points out, we have held that a summary plan description prevails in cases where the summary granted a beneficiary certain rights or privileges that the policy did not. For example, in Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 621 (8th Cir. 1998), a summary plan description entitled the beneficiary to "bridge" a break in her service time for retirement benefit purposes. The formal plan document ruled out such bridging. Id. Based on the importance of disclosure to employees, an objective underlying ERISA, we held that the summary plan description governed and the beneficiary was entitled to the benefit of the bridging provision. Id. ("The accessible provisions govern because adequate disclosure to employees is one of ERISA's major purposes." (quotation and internal marks omitted)). Fort Dearborn argues the same rule should apply in the converse situation, where a summary plan description secures additional rights to a plan administrator.

Fort Dearborn cites only one prior opinion by this court that has held that a summary plan description sufficed to secure rights to the plan administrator which were not otherwise contained in a plan document. In Gamboa, we analyzed an employer's right to recoup health care benefits the employer paid under a self-funded ERISA health and welfare plan where the beneficiary later obtained a settlement from a tortfeasor, arising out of the same accident. 479 F.3d at 540. The summary plan description was the only plan document providing health benefits. Id. at 544-45. No separate written policy existed. Id. Nonetheless, the employer provided over $175,000 in health care benefits after a drunk driver injured the employee's spouse in an auto accident. Id. at 540. The employee later settled with the tortfeasor for one million dollars. Id. The summary plan description provided the employer the right to recoup the benefits paid if the beneficiary later settled with the tortfeasor. Id. The employee argued she did not need to repay the benefits because the reimbursement

provision appeared only in the summary plan description, not in a formal plan document. Id. at 541. We held that "[w]here no other source of benefits exists, the summary plan description *is* the formal plan document." Id. at 544. We also noted that "if a dispute had arisen over the amount of benefits due, the [insurer] would no doubt have been bound to provide benefits in accordance with [the summary plan description]." Id. at 545. Such being the case, we reasoned that "what is good for the goose is good for the gander" and refused to allow the employee, who had received benefits by virtue of the summary plan description, "to deny the corresponding responsibilities and obligations." Id. We reversed the district court's summary judgment, allowing the employer's claim for reimbursement to go forward. Id. at 544.

Gamboa is distinguishable on two grounds. First, in Gamboa, there was no written policy underlying the summary plan description. In light of ERISA's requirement that such a writing exist, 29 U.S.C. § 1102(a)(1), we held the summary plan description *was* the policy. Gamboa, 479 F.3d at 544. We also noted the obvious inconsistency of the employee's attempt to avoid the adverse consequences of the summary plan description while accepting the benefits only it provided. Id. at 545. In contrast, a detailed written policy comprehensively delineates the rights and responsibilities of the parties in this case. Jobe is not seeking benefits only available through the virtues of the writing she simultaneously wishes to foreswear. For that reason, Gamboa is not dispositive of the present question.[3]

---

[3]In Groves v. Metropolitan Life Insurance Co., 438 F.3d 872, 874 (8th Cir. 2006), we also held a plan booklet, summarizing the plan, was sufficient to grant discretionary authority to the plan administrator. Just as in Gamboa, however, the record did not contain an underlying policy. Id. at 874 n.2. Similarly, in Jackson v. Prudential Insurance Co. of America, 530 F.3d 696, 701 (8th Cir. 2008), we cited Groves and applied a deferential standard of review. Jackson does not discuss the underlying policy, and the issue of the proper standard of review was not raised because the parties agreed as to the standard of review. Id. at 701 & n.6.

Perhaps more fundamentally, the distinct circumstances of this case implicate, in a correspondingly distinct way, the ERISA requirements and ERISA's underlying policies that originally led us to hold that a summary plan description can prevail over a conflicting policy. From the very first time we indicated a summary plan description provision would prevail over a conflicting policy provision, we justified the proposition by reference to "the importance of disclosure to the [ERISA] statutory regime." See Jensen, 38 F.3d at 952 (citing other circuit courts of appeals for the rule but not applying it because the rule "does not apply when [as in Jensen] the plan document is specific and the [summary plan description] is silent on a particular matter"). The first decision to *apply* the rule and bind an employer to a promise made in a summary plan description reasoned that "[a]dequate disclosure to employees is one of ERISA's major purposes" and, "[b]ecause of the importance of disclosure, in the event of a conflict between formal plan provisions and summary plan provisions, the summary plan description provisions prevail." Barker, 122 F.3d at 633. Again, in Marolt, we applied the rule where "[a] plan document required by law to be plainspoken for the benefit of average plan participants, 29 U.S.C. § 1022(a)(1), and furnished to participants, see id. § 1024(b)(1), says one thing, and an obscure passage in a transactional document only lawyers will read and understand says something else," and we held "[t]he accessible provisions govern because adequate disclosure to employees is one of ERISA's major purposes." 146 F.3d at 621 (internal quotations and marks omitted).

The disclosure purpose will not always be advanced, however, by holding that the summary plan description prevails over the policy in all circumstances. Where the entity seeking enforcement of the summary provision drafted the more detailed policy and can be presumed to know its terms, allowing that party to rely on the summary plan description—which it also drafted—would do little to enhance either party's understanding of their legal rights and responsibilities. Conversely, the employee can be expected to rely on the summary plan description. As we have said, a summary plan description "'is intended to be a document easily interpreted by a layman; an

employee should not be required to adopt the skills of a lawyer and parse specific undefined words throughout the entire document to determine whether they are consistently used in the same context.'" Barker, 122 F.3d at 634 (quoting Chiles v. Ceridian Corp., 95 F.3d 1505, 1517-18 (10th Cir. 1996)).

The circumstances of this case demonstrate how application of a rule that the summary plan description always prevails will often contradict the rationale supporting application of the rule in other contexts. Here, the two plan documents are in conflict regarding the extent of the administrator's authority to interpret the plan. Contrary to Fort Dearborn's contention, a grant of discretion to the administrator is a critical provision. A full two decades ago, "the Supreme Court established that a denial of benefits is to be reviewed under the *de novo* standard unless the plan gives the administrator (or fiduciary) discretion to determine benefits and to construe the terms of the plan." Schwartz v. Prudential Ins. Co. of Am., 450 F.3d 697, 698 (7th Cir. 2006) (citing Bruch, 489 U.S. at 115). Thus, if no summary plan description existed in this case, the default standard of review would be *de novo*. The policy does not provide discretion, while the summary does. Thus, the two documents conflict.

If an employee, realizing the discrepancy and attempting to resolve it, were to look elsewhere in the two plan documents, she could reasonably determine that the documents uniformly tell her the policy prevails over the summary plan description.[4] She could then look back to the policy and conclude—justifiably—that the administrator possessed no discretion to interpret the policy and no entitlement to

---

[4]The summary plan description provides: "In the case of any item not covered by the [summary plan description], or in the event of any conflict between the [summary plan description] and the Policy, the Plan will always control. . . . [N]o rights accrue by reason of or arising out of any statement shown in or omitted from, this [summary plan description]." (J.A. vol. II at 39.) Likewise, the policy provides: "If the terms of a Certificate and this policy differ, this policy will govern." (Id. at 22.) The policy describes the certificate as a summary (id. at 3), and the summary plan description includes the certificate (id. at 39).

deferential review. Thus, to hold that the summary plan description always prevails over the policy—even where the summary plan description indicates the policy prevails—would only invite further confusion for employees.

This illustrates that our cases holding that a summary plan description prevails over the formal policy did not squarely address, and likely did not contemplate, the situation presented here.[5] In other words, whether a summary plan description prevails over the formal policy where the summary grants to a plan administrator rights not present in the formal policy, yet also indicates that the policy prevails if the two documents conflict, is an issue of first impression in this circuit.

Other circuits have squarely confronted the question, and have done so in cases that are factually analogous to this case. At least three circuits have held that a grant of discretion to the plan administrator, appearing only in a summary plan description, does not vest the administrator with discretion where the policy provides a mechanism for amendment and disclaims the power of the summary plan description to alter the plan. See Schwartz, 450 F.3d at 699; Shaw v. Conn. Gen. Life Ins. Co., 353 F.3d 1276, 1283-84 (11th Cir. 2003); Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1161-62 (9th Cir. 2001).[6] We join our three sister circuits in holding that

---

[5]In Sturges v. Hy-Vee Employee Benefit Plan & Trust, 991 F.2d 479 (8th Cir. 1993) (per curiam), we confronted an ERISA plan including a summary plan description that restricted the employee's beneficiary's health insurance benefits. We favorably cited Glocker v. W.R. Grace & Co., 974 F.2d 540, 542-43 (4th Cir. 1992), for the proposition that "when [a] summary favors [the] employer, [the] employer cannot disavow a disclaimer in the summary stating the plan controls." Sturges, 991 F.2d at 480-81. We agreed with the district court that the employer abused its discretion in interpreting the plan to deny coverage based on the summary's restriction of benefits. Id. at 480. Although Sturges appears to support our decision in this case, its brevity makes it unclear whether the panel addressed the arguments made here.

[6]In contrast, the court in Murphy v. IBM Corp., 23 F.3d 719, 721 (2d Cir.) cert. denied, 513 U.S. 876 (1994), assumed that a grant of discretion in a summary plan

the summary plan description does not vest the administrator with discretion under such circumstances.

In urging us to part ways with those circuits, Fort Dearborn views the summary plan description to be a trump card. Under Fort Dearborn's view of ERISA, a formal amendment was not necessary because the summary plan description is a plan document, just like the underlying policy the summary describes. While that conclusion is superficially congruent with our previous cases holding that a summary plan description prevails over conflicting language in the policy, it loses sight of the rationale underlying § 1022 and related case law. As we noted above, "one of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83-84 (1995). The summary plan description is meant to further that goal. See id. (noting the purpose of the summary plan description is "to communicate to beneficiaries the essential information about the plan . . . 'written in a manner calculated to be understood by the average plan participant.'" (quoting 29 U.S.C. § 1022(a)(1))). "[T]he implication of § 1022 is that the [summary plan description] will be an accurate summary, not an unnegotiated enlargement of the administrator's authority." Schwartz, 450 F.3d at 700. Due to the policy's silence in the face of a decades-old Supreme Court ruling establishing a default *de novo* standard of review, the summary plan description does not summarize a provision of the policy related to discretion, but instead enlarges the administrator's authority.

At the same time, Fort Dearborn's interpretation of § 1022 would undermine the § 1102(b)(3) requirement that each policy provide a mechanism for amendment. ERISA requires every plan to provide a procedure governing amendment of the plan.

---

description sufficed to grant discretion. Sperandeo v. Lorillard Tobacco Co., 460 F.3d 866, 872 (7th Cir. 2006), describes Murphy as "assuming without analysis" that a grant of discretion in a summary plan description is operative. Sperandeo also notes Murphy "did not describe the remainder of the documents." Id.

29 U.S.C. § 1102(b)(3). In this case, the policy provided an amendment procedure. ERISA, following trust law principles, mandates "that whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level." Curtiss-Wright Corp., 514 U.S. at 85. Fort Dearborn does not argue that the summary plan description provision putatively granting discretion amounts to a procedurally proper amendment of the policy. To hold that the summary plan description nonetheless granted the administrator discretion in this case would be to endorse the practice of issuing ERISA policies that are silent on key provisions and later issuing summary plan descriptions filling the gaps with terms favoring the employer. While the Supreme Court has said the amendment requirement is not a disclosure requirement, Curtiss-Wright Corp., 514 U.S. at 84, there would nonetheless be little need to follow formal amendment procedures if key terms could be changed by a summary plan description.

Rather than blindly apply a rule that the summary plan description always prevails, we must give the language of the two documents a "common and ordinary meaning." Barker, 122 F.3d at 632. We must construe the documents "as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words." Id. The summary plan description expressly states that no rights accrue by reason of the summary. We believe the average plan participant would read that provision and conclude that the policy prevails if it conflicts with the summary, and that the summary could not, standing alone, grant Fort Dearborn the discretion it claims to have.

Fort Dearborn argues we should rebuff Jobe's attempt to rely on such an "integration" clause to avoid application of rights found in a summary plan description. While courts have rejected *employers'* attempts to use language disclaiming employee rights and employer responsibilities granted in a summary plan description, see, e.g., Pierce v. Sec. Trust Life Ins. Co, 979 F.2d 23, 27-28 (4th Cir. 1992), the same courts have allowed *employees* recourse to similar language and

justified their approach by reference to ERISA's goal that the summary plan description accurately convey the employee's rights and responsibilities, see Glocker, 974 F.2d at 541-43.

Because the policy's failure to grant discretion results in the default de novo standard, the policy controls over the inconsistent grant of discretion to the administrator in the summary plan description. Accordingly, the administrator was not entitled to discretionary authority in determining eligibility for benefits or construing the plan's provisions. Consequently, the district court should not have reviewed the administrator's decision for abuse of discretion but, rather, should have reviewed it *de novo*. As the more deferential discretionary standard of review could have affected any facet of the district court's analysis, we are far from certain the district court would have arrived at the same conclusions applying a *de novo* standard of review. See Wallace v. Firestone Tire & Rubber Co., 882 F.2d 1327, 1330 (8th Cir. 1989) ("As [the arbitrary and capricious standard] of review is interwoven into almost all of the court's factual findings, we cannot be sure it would have made the same factual conclusions if it had employed the required *de novo* standard of review."). The district court is the proper forum to conduct the appropriate *de novo* review in the first instance.

## IV.

Accordingly, the judgment of the district court is reversed, and the case is remanded for a *de novo* review of the plan administrator's decision.

_____