# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4155

_____

T.L., By and Through Her Mother and   *
Next Friend, Katherine Ingram,   *
  *
    Plaintiff/Appellant,   *
  *   Appeal from the United States
   v.   *   District Court for the
  *   Eastern District of Missouri.
United States of America,   *
  *
    Defendant/Appellee,   *
  *
Oliver; Ward, Dr.; Tenet Healthsystem   *
DI, Inc.,   *
  *
    Defendants.   *

_____

Submitted: October 12, 2005
Filed: April 6, 2006

_____

Before RILEY, HANSEN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Katherine Ingram, on behalf of her minor daughter, T.L., appeals the district court's[1] grant of summary judgment dismissing her medical malpractice action against

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"). We affirm.

I.

On December 17, 1997, Katherine Ingram gave birth to a daughter, T.L., who suffered a hypoxic brain injury during delivery, and was later diagnosed with cerebral palsy. Ingram, who was 15 years old at the time, began her pre-natal care at St. Louis Comprehensive Health Center, Inc., a federally-funded medical facility. She was told by her doctor at the health center that when she went into labor, she should go to Deaconess Hospital, a private facility not funded by the federal government. Ingram was admitted to Deaconess on December 16, and Dr. Tony Lam, who was employed by People's Health Centers, Inc., a federally-funded clinic, delivered T.L. the following evening. After the delivery, T.L. was transferred to Cardinal Glennon Children's Hospital for specialized care and treatment.

Shortly after T.L.'s birth, an attorney was retained on Ingram's behalf, and the attorney hired a professional photographer to take pictures of T.L. at the hospital six days after T.L.'s birth. On March 2, 1998, Ingram's counsel requested medical records from Deaconess regarding T.L.'s delivery. T.L. has since been diagnosed with cerebral palsy, which Ingram alleges was caused by Lam's negligence during the delivery.

Ingram initially filed suit in the Circuit Court of the City of St. Louis on May 15, 2000, against Lam and another treating doctor, Aaron Pile. The government certified, pursuant to 42 U.S.C. §233(c), that the doctors were employed at federally supported health centers, *id.* § 233(g), and were working within the scope of their employment at the time of T.L.'s birth. On that basis, the defendants removed the action to the federal district court on September 12, 2000. The government was granted leave to substitute the United States for the doctors, and the parties stipulated

to a dismissal of the action without prejudice. Ingram filed an administrative claim with the Department of Health and Human Services on November 22, 2000. The agency failed to make a final disposition of the claim within six months, and Ingram filed suit under the FTCA, 28 U.S.C. § 2675(a), in the district court on December 19, 2001. Ingram later moved to dismiss her allegations against Pile, and the court granted the motion.

The government then moved to dismiss or, in the alternative, for summary judgment, on the remaining claim, arguing that the complaint was barred by the statute of limitations. The court granted the motion, holding that Ingram's cause of action accrued when T.L. was transferred to Cardinal Glennon Hospital on December 18, 1997, because Ingram was informed that T.L. had "brain damage." At that point, the district court concluded, Ingram had a duty to exercise reasonable diligence in determining the cause of the known injury, and because she failed to file an administrative claim under the FTCA within two years after the claim accrued, her action was barred by the statute of limitations.

II.

As a threshold matter, we find it important to consider whether compliance with the FTCA's statute of limitation is a jurisdictional prerequisite to bringing a suit or an affirmative defense to the action. The district court, noting confusion in our court's decisions on the issue, assumed the view most favorable to the plaintiff. The court thus characterized the statute of limitations as an affirmative defense, and considered the government's motion as one for summary judgment. *See Motley v. United States*, 295 F.3d 820, 822 (8th Cir. 2002). Under that approach, the district court was required to consider all disputed facts in the light most favorable to the non-movant, and Ingram's appeal is based in part on her contention that the district court improperly weighed conflicting evidence in dismissing her claim.

-3-

Our earliest cases arising under the FTCA treated the statute of limitations as jurisdictional. The federal courts have jurisdiction over claims under the FTCA only to the extent that the United States has waived its sovereign immunity. When the United States consents to be sued, "[t]he terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The statute of limitations is a condition of the waiver of sovereign immunity under the FTCA, *see Wollman v. Gross*, 637 F.2d 544, 547 (8th Cir. 1980), and we thus reasoned that "[c]ompliance with the statute of limitations of 28 U.S.C. § 2401(b) is a jurisdictional prerequisite to suit." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990); *see also Radman v. United States*, 752 F.2d 343, 344 (8th Cir. 1985).

In 1991, however, we reversed course in light of the Supreme Court's decision in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), and held that compliance with the statute of limitations was not a jurisdictional prerequisite to suing the government under the FTCA. *Schmidt v. United States*, 933 F.2d 639 (8th Cir. 1991). In *Irwin*, the Supreme Court held that 42 U.S.C. § 2000e-16(c), which requires a plaintiff to file a Title VII employment discrimination claim against the government within 30 days of final agency action, could be equitably tolled. The Court concluded that once Congress has made a waiver of sovereign immunity, the application of the rule of equitable tolling to suits against the government "amounts to little, if any, broadening of the congressional waiver," and "is likely to be a realistic assessment of legislative intent." *Id*. at 95.

We reasoned in *Schmidt* that a necessary corollary to the express holding of *Irwin* was "an implied holding" that compliance with the statute of limitations was not a jurisdictional prerequisite to an action against the government, because "[i]f the statute of limitations were jurisdictional, the court would have no power to consider tolling it." *Schmidt*, 933 F.2d at 640. *Schmidt* thus considered the failure to comply

-4-

with the statute of limitations in the FTCA as an affirmative defense which the government has the burden of establishing.  *Id.*

Since *Schmidt*, some panels of this court have treated the statute of limitations as an affirmative defense, *Krueger v. Saiki*, 19 F.3d 1285, 1286 (8th Cir. 1994) (per curiam); *Slaaten v. United States*, 990 F.2d 1038, 1043 n.5 (8th Cir. 1993); *Arigo v. United States*, 980 F.2d 1159, 1161 (8th Cir. 1992), while others returned to the view that compliance with the statute of limitations is a jurisdictional prerequisite.  *McCoy v. United States*, 264 F.3d 792, 794 (8th Cir. 2001) (citing *Walker v. United States*, 176 F.3d 437, 438 (8th Cir. 1999) (per curiam)).  We noted in *Motley* the conflicting precedent, but found it unnecessary to pursue the matter.  295 F.3d at 822.

We think it is important in this case to resolve whether the statute of limitations is a jurisdictional prerequisite or an affirmative defense.  Ingram argues with some force that the district court resolved disputed factual issues in granting the motion for summary judgment, and if the statute of limitations is an affirmative defense, then the resolution of factual disputes would be improper.  But if the statute of limitations is jurisdictional, then the district court not only may, but must, resolve factual disputes as necessary to determine its jurisdiction.  *Osborn*, 918 F.2d at 729-30.

When we are confronted with conflicting circuit precedent, the better practice normally is to follow the earliest opinion, as it should have controlled the subsequent panels that created the conflict.  *See Kostelec v. State Farm Fire & Cas. Co.*, 64 F.3d 1220, 1228 n.8 (8th Cir. 1995); *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc); *cf. Graham v. Contract Transp., Inc.*, 220 F.3d 910, 914 (8th Cir. 2000).   In this instance, however, it is not clear which opinion should be considered the "earliest" for that purpose.  Our decisions in *Radman* and *Osborn* first held that the statute of limitations is jurisdictional.  *Schmidt* then deviated from our prior panel decisions, but it did so based on an interpretation of the Supreme Court's decision in *Irwin*, and it is well settled that a panel may depart from circuit precedent

based on an intervening opinion of the Supreme Court that undermines the prior precedent. *Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000). Our panel decision in *McCoy* then departed from the decision in *Schmidt* without mentioning *Schmidt*, although the intervening Supreme Court decision in *United States v. Brockamp*, 519 U.S. 347 (1997), arguably justified the departure. *Cf. Perez v. United States*, 167 F.3d 913, 916 (5th Cir. 1999) (suggesting the decision in *Brockamp* may lead the Eighth Circuit to reconsider *Schmidt*). *Brockamp* made clear that the availability of equitable tolling depends on congressional intent, and held that tolling was not available in connection with tax refund claims. 519 U.S. at 353-54.

Having now surveyed the entire landscape, we believe that to the extent the Supreme Court's decision in *Irwin* justified a departure from circuit precedent holding that the FTCA statute of limitations is a jurisdictional prerequisite (a proposition we accept based on panel precedent in *Schmidt*), the Court's subsequent decision in *Brockamp* clarifies *Irwin* and calls for a return to our court's original view that the statute of limitations defines the court's jurisdiction. *Schmidt* was apparently premised on an understanding that *Irwin* announced an equitable power of the federal courts to toll a statute of limitations in all suits against the government. The existence of such an equitable power, the court thought, was inconsistent with holding that compliance with the statute of limitations in the FTCA is a jurisdictional requirement.

The intervening decision in *Brockamp*, however, demonstrates that the availability of equitable tolling depends on congressional intent, and is not necessarily available as a matter of general equitable power in all actions against the government. As *Brockamp* illuminates, the rule of equitable tolling applies in FTCA cases only because Congress intended it to apply. It is thus one of the "terms" of the government's consent to be sued, *Sherwood*, 312 U.S. at 586, and there is no inconsistency between viewing compliance with the statute of limitations as a jurisdictional prerequisite and applying the rule of equitable tolling. *See Heinrich v. Sweet*, 44 F. Supp. 2d 408, 414-15 (D. Mass 1999); *Dillard v. Runyon*, 928 F. Supp.

1316, 1324 (S.D.N.Y. 1996); *Willis v. United States*, 879 F. Supp. 889, 891-92 (C.D. Ill. 1994), *aff'd on other grounds*, 65 F.3d 171 (7th Cir. 1995). We thus align ourselves with several other circuits in holding that considerations of equitable tolling simply make up part of the court's determination whether an action falls within the scope of the waiver of sovereign immunity granted by Congress, and thus within the jurisdiction of the federal courts. *See Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003); *Millares Guiraldes De Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998); *Hart v. Dep't of Labor*, 116 F.3d 1338, 1339 (10th Cir. 1997); *Gould v. United States Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990). *But see Hedges v. United States*, 404 F.3d 744, 747-51 (3d Cir. 2005).

III.

Because a plaintiff's compliance with the statute of limitations is prerequisite to the district court's jurisdiction over a suit against the United States under the FTCA, the court must resolve material issues of disputed fact and determine whether the action was timely filed. *Osborn*, 918 F.2d at 729-30. Therefore, because the government's motion should have been considered as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), it would not have been error for the court to make credibility determinations and to weigh conflicting evidence in resolving the motion. We therefore bypass Ingram's contentions that the district court improperly dismissed evidence favorable to her position in the context of a motion for summary judgment. Rather, to the extent Ingram argues that the district court relied on facts that are not undisputed, we accept the district court's findings of fact unless they are clearly erroneous. Fed. R. Civ. P. 52(b).

Under the FTCA, claims against the United States are barred unless an administrative claim is filed with the appropriate agency within two years after the claim accrues. 28 U.S.C. § 2401(b). In medical malpractice cases, a claim accrues when the plaintiff "actually knew or in the exercise of reasonable diligence should

have known, the cause and existence of his injury." *Motley*, 295 F.3d at 822 (internal quotation omitted).

Ingram argues that her claim accrued, at the earliest, in August 1999, and that because she filed an administrative claim in November 2000, she was within the two-year statute of limitations. She contends that she had no reason to know of her daughter's cerebral palsy until August 1999, when T.L. was 18 months old, and that no doctor ever told her that Dr. Lam's alleged negligence during delivery caused T.L.'s cerebral palsy.

Knowing the cause and existence of an injury, however, is not the same as knowing that a legal right has been violated. *Motley*, 295 F.3d at 822. "Once a plaintiff knows or should know that he has been injured and who has inflicted the injury, '[t]here are others who can tell him if he has been wronged, and he need only ask.'" *Id.* (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)).

The district court found that Ingram was aware of the injury to T.L. by December 18, 1997, when T.L. was transferred to Cardinal Glennon Hospital. The court noted that the consent form that Ingram signed to authorize the transfer diagnosed T.L. with "respiratory distress," indicated that she was "incubated," and that she demonstrated "lip smacking and twitching." (J.A. at 64). The court also pointed out that the medical records from Cardinal Glennon Hospital indicate that Ingram and T.L.'s grandparents were informed on December 18 that T.L. had "severe, permanent brain injury and [a] poor prognosis."[2] (J.A. at 69). Hospital records reflect

---

[2]Ingram argues that the medical records introduced by the government in support of its motion were unauthenticated and thus improperly considered by the district court. But Ingram did not raise any challenge to the medical record evidence in the district court, so any objection to the district court's consideration of the materials was forfeited, and we review the record only for plain error. *See Diesel Machinery, Inc. v. B.R. Lee Industries*, 418 F.3d 820, 835 (8th Cir. 2005). Given that

that a few days later, Ingram informed a doctor at Lutheran Hospital, where Ingram stayed for observation after the delivery at Deaconess, that her baby had "sustained some brain damage." (*Id*. at 71.) In light of this evidence, the district court's determination that Ingram knew of the existence of T.L.'s brain injury on December 18, 1997, was not clearly erroneous.

Ingram claims that even if she was informed that T.L. had brain damage, she was unaware that T.L. had cerebral palsy until she began to suspect that something was wrong with her daughter in August 1999. A plaintiff has a duty, however, "to seek advice regarding the possibility of legal action" once she is "armed with the facts about the harm done to [her]." *Osborn*, 918 F.2d at 731 (internal quotations omitted). Once Ingram was aware in December 1997 that her daughter had "severe, permanent brain injury," she was on notice of the injury. Cerebral palsy is "a disability resulting from damage to the brain before, during, or shortly after birth, and outwardly manifested by muscular incoordination and speech disturbances." *Merriam-Webster's Medical Desk Dictionary* 129 (rev. ed. 2005). The accrual of a claim based on brain injury at birth is not tolled merely because the injury worsens and develops into cerebral palsy. Ingram had a duty under the law to seek advice about possible legal action at the time she knew of T.L.'s brain injury, not only after the full effects of the brain damage were manifested.

Ingram also argues that the claim did not accrue until she was aware of the cause of her daughter's cerebral palsy. She points to the fact that a treating physician who examined T.L. when she was six months old noted that T.L. was "developmentally [within normal limits] thus far." Ingram contends that this opinion is evidence that her claim did not accrue earlier, because she was not yet aware of the

Ingram provided these records to the government, referred to one of the records in the district court in support for her arguments, and does not identify any unfair prejudice arising from the district court's consideration of the records, we find no plain error warranting relief. *Id*.

specific diagnosis and cause of the cerebral palsy.  The medical record in question, however, also stated that T.L. was afflicted with "hypoxic-ischemic encephalopathy," a term for irreversible brain damage caused by a lack of oxygen and blood flow to the brain, often occurring during birth.  *Stedman's Medical Dictionary* 588 (27th ed. 2000); Debbie Mcpartland, *Introduction to Hypoxic Ischemic Encephalopathy* (Nov. 16, 2000),  *available at*  http://www.suite101.com/article.cfm/hypoxic_ischemic_ encephalopathy/36008.  The medical record thus provided continuing notice both of the injury and even the probable cause of the injury.  And even examining in isolation the statement that T.L. was "developmentally within normal limits," we cannot agree that conflicting or inaccurate diagnoses are sufficient to toll the statute of limitations, for it would be impractical to conclude that the limitations period stops and starts depending on the diagnosis of each doctor who examines a patient after the occurrence of an injury.  Once a plaintiff is aware of the facts of the harm done to her, she has a duty to exercise due diligence in investigating its cause, and "[w]hether the advice received is competent or incompetent makes no difference to the accrual of [her] claim."  *Osborn*, 918 F.2d at 731.

As the district court noted, moreover, there is evidence that Ingram began to contemplate possible legal action while still at the hospital after T.L.'s birth.  An attorney was retained shortly after the birth, and while he was originally hired to investigate a fall taken by Ingram at the hospital, he was informed that T.L. was born with cuts and bruises on her head, face, and neck.  A employee from the attorney's office sent a professional legal photographer to photograph T.L. six days after she was born, and the attorney requested medical records from Deaconess within three months.  This evidence indicates that Ingram knew of and was investigating the cause and existence of T.L.'s injury shortly after T.L.'s birth.  The district court thus did not clearly err in determining that T.L.'s brain damage was the injury, that the cerebral palsy was the degree of this injury, and that a claim accrued as of December 18, 1997, when Ingram knew of the cause and existence of T.L.'s brain injury.

IV.

Ingram next argues that even if the claim accrued on December 18, 1997, the statute of limitations was tolled for three separate reasons: (1) she did not know and could not reasonably have known that Dr. Lam was employed by a federally-funded clinic, (2) she requested but did not receive complete medical records from the hospital, and (3) she was a minor when T.L. was born. The doctrine of equitable tolling applies to FTCA claims against the government, but does not apply to "garden variety" claims of excusable neglect, *Irwin*, 498 U.S. at 458, and should be invoked only in exceptional circumstances. *Motley*, 295 F.3d at 824. The burden is on the party claiming the benefit of the exception to the statute of limitations to show that he or she is entitled to it. *Irwin*, 498 U.S. at 458.

On the first point, Ingram contends that she delivered T.L. at Deaconess, a private hospital, and had no reason to suspect that her baby was delivered by an employee of People's Health Centers, Inc., a federally-funded clinic at which she was never a patient. Ingram also points out that there is no indication in her medical records that Dr. Lam was employed by a federally-funded clinic, and argues that one record even implies that he was a "house" physician, *i.e.*, an employee of Deaconess. A newborn nursery register for December 17, 1997, includes a notation indicating that T.L.'s delivery was an "HC" (*i.e.*, house case) at Deaconess.

The statute of limitations is not tolled, however, simply because a plaintiff is unaware that an alleged tortfeasor is a federal employee. *Motley*, 295 F.3d at 824. We said in *Wollman v. Gross* that while the contrary result might be "desirable," to accept this argument "would be in effect rewriting the two-year statute of limitations of 28 U.S.C. § 2401(b) to allow the state statute of limitations to apply whenever plaintiff is unaware of the status of the defendant as a federal employee acting within the scope of his employment." 637 F.2d at 548-49. A plaintiff thus must inquire into the employment status of her doctor.

-11-

"Where the government or its agents have not misled or deceived a plaintiff, or otherwise hidden the legal identity of alleged tortfeasors as federal employees, the cause of action still accrues when the existence of an injury and its cause are known." *Garza v. United States Bureau of Prisons*, 284 F.3d 930, 935 (8th Cir. 2002). Ingram knew the identity of the doctor who delivered her baby, and there is no indication that Dr. Lam or the United States attempted to conceal Dr. Lam's status as a federal employee. The mistaken notations on the private hospital's records cannot be attributed to the United States. Therefore, the limitations period is not tolled on this basis.

Ingram also contends that the limitations period should be equitably tolled because she timely requested medical records from Deaconess, but did not receive a full and complete copy of the records. She argues that a complete copy of the "fetal heart monitoring strips" used during the care of T.L. is essential to determining the existence and cause of T.L.'s cerebral palsy, and that the hospital's failure to provide these records entitles her to equitable tolling. According to the affidavit of Ingram's attorney, he began requesting the strips on December 23, 1997, but was provided with only a partial and partly illegible copy. Deaconess later reported that all of the original strips are missing. The district court nonetheless refused to toll the limitations period on this basis, explaining that the loss or destruction of some fetal monitoring strips did not overcome the plaintiff's duty to exercise diligence in filing her claim. The court observed that the loss of these records is a fact that would continue to exist throughout the litigation, whether or not the plaintiff had timely filed her claim. We agree with the district court.

"[W]here a plaintiff has timely requested records that contain the specific facts of negligence that caused his injury, and those facts are not otherwise knowable, the cause of action does not accrue until he receives the records." *Garza*, 284 F.3d at 935-36. Ingram does not argue, however, that the fetal heart monitoring strips were the only record showing that T.L. had suffered a brain injury. In fact, the district court

-12-

found that Ingram had been informed of the injury by hospital staff shortly after T.L.'s birth. Ingram was provided with many other medical records well before the limitations period expired, and, in the exercise of due diligence, she could have obtained a medical opinion as to the cause of T.L.'s brain injury within the limitations period. There was thus no error in declining to toll the limitations period based on the inability to discover the entirety of the hospital's records concerning T.L.'s care.

Ingram argues finally that the statute of limitations should be equitably tolled because she was 15 years old when T.L. was born. Ingram notes that she had no legal guardian at the time, although her grandmother had cared for her since she was six years old. In *Wilson ex rel. Wilson v. Gunn*, 403 F.3d 524, 526 (8th Cir. 2005), we held that the FTCA limitations period was not tolled merely because an infant's mother was also an "infant parent" at the time of the delivery. We noted that while the mother could not herself commence a civil suit, she was responsible for her daughter's well-being, knew of the alleged injuries and their cause just days after the delivery, and could make an administrative claim while still an "infant." *Id.* at 527.

Ingram is T.L.'s mother and has been responsible for her care since T.L.'s birth, as evidenced by her signature on the form consenting to transfer T.L.'s care from Deaconess to Cardinal Glennon Children's Hospital. The district court found that Ingram was aware of T.L.'s brain damage shortly after her birth. Although Ingram herself did not have an appointed guardian, her grandmother was actively involved in her care, was informed of T.L.'s brain damage and poor prognosis, and eventually became Ingram's guardian for the purpose of filing the civil suit against the doctors in state court. Ingram's family even retained an attorney for her six days after T.L.'s birth. Although a minor, Ingram could have filed an administrative claim. *Wilson*, 403 F.3d at 527. Under these circumstances, it is not inequitable to apply the ordinary rule that infancy does not toll the statute of limitations.

*     *     *

-13-

For the foregoing reasons, we affirm the judgment of the district court.

_____