# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-1524

———————————————

Gwendolyn Whitley

*Plaintiff - Appellee*

v.

Standard Insurance Company

*Defendant - Appellant*

—————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

—————————

Submitted: October 21, 2015
Filed: March 4, 2016

—————————

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

—————————

LOKEN, Circuit Judge.

In February 2011, Dr. Gwendolyn Whitley was involved in a roll-over car accident, suffering a serious head injury. Board certified in family medicine, Dr. Whitley had worked as an emergency room physician at Lake Region Hospital ("Lake Region") in Fergus Falls, Minnesota, in the twenty-four months preceding the accident. She returned to work full-time from March 16 through March 24, but

fatigue and short-term memory issues forced her to stop. On June 28, she filed a claim for long-term disability ("LTD") benefits under Lake Region's Group Long Term Disability Insurance Policy issued by Standard Insurance Company ("Standard"). Standard, serving as administrator of the Policy, approved Whitley's claim and paid LTD benefits beginning May 22, 2011.

In August 2012, Standard determined that Whitley was no longer disabled, discontinued benefits effective July 31, 2012, and rejected Whitley's internal appeal of that decision. She then commenced this action in state court, asserting various claims against Standard and Lake Region. After Standard removed the case to federal court, Whitley filed an amended complaint asserting, as relevant here, a claim under ERISA that Standard's denial of continuing disability benefits was contrary to the terms of its Policy. See 29 U.S.C. § 1132(a)(1)(B). The district court granted summary judgment for Whitley, concluding that Standard abused its discretion in discontinuing LTD benefits. Standard appeals. Reviewing the grant of summary judgment *de novo* and Standard's decision for abuse of discretion, we reverse. See Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1038 (8th Cir.), cert. denied, 562 U.S. 1062 (2010) (standard of review).

## I. Background.

For physician members of the insured group, such as the 57-year-old Whitley, the Policy provided "Own Occupation" disability benefits up to retirement age, if the disability persisted:

[Y]ou are required to be Disabled only from your Own Occupation.

You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:

1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and

2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

\*     \*     \*     \*     \*

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted.

Whitley's June 2011 claim stated that she was unable to perform her Own Occupation due to post-concussive syndrome, C5 disc rupture, back pain, headaches, and memory problems. She submitted an Attending Physician Statement from her primary care physician, Dr. Patricia Lindholm, who diagnosed Whitley with "post-concussive syndrome." Dr. Lindholm noted Whitley's failed attempt to return to work, and recommended that she not return to work until cleared by treating neuropsychologist Dr. Paula Bergloff. In an April 7 neuropsychological evaluation, Dr. Bergloff concluded that Whitley suffered from "[m]ild traumatic brain injury with persistent postconcussion symptoms." Dr. James Andrews examined Whitley on April 26 and concluded that Whitley should not be working because her postconcussive syndrome was "significantly affecting her memory."

In August 2011, Whitley submitted Attending Physician Statements from Dr. Bergloff and Dr. Tanya Harlow. Dr. Bergloff recommended that Whitley not be working and opined that she would need a "reduction in work hours" when able to return to work. Dr. Harlow diagnosed Whitley as suffering from postconcussive syndrome and noted she was "gradually improving" but unable to work because of "cognitive difficulties." Dr. Harlow opined that Whitley was likely to improve in three to six months and might be ready for a trial return to work within two months.

In September, Dr. Andrews took MRIs of Whitley's spine, found no significant problems, and noted "excellent gains from a postconcussive standpoint."

Psychologist Dr. Elaine Greif, an independent consultant, reviewed the claim at Standard's request and agreed that Whitley was disabled due to her "mild traumatic brain injury with persistent postconcussive symptoms and a history of multiple concussions." Dr. Greif predicted that Whitley would be able to return to work within three to six months and recommended that work restrictions be lifted based on future neuropsychological re-evaluations. On September 27, Standard approved Whitley's claim effective May 22 (the end of the Policy's ninety-day waiting period). The letter advised that Standard would require Attending Physician Statements "to monitor and document your continued eligibility for LTD Benefits," and asked Whitley to notify Standard "of any change in your medical or employment status."

On August 30, 2011, Whitley told Dr. Harlow that "she is ready to go back to work in the next month." In January 2012, Whitley told Dr. Lindholm she was "doing well" and was "currently asymptomatic." That month, Dr. Bergloff concluded Whitley was doing "fairly well" and recommended a part-time return to work. In a February 2012 letter to Lake Region, Whitley stated that she was ready to return to "perform the full scope of emergency medicine duties." She reported that her "medical team has approved my return to work in the Emergency Department" and requested that she be allowed to return "for two 4 hour shifts a week with double coverage for the first weeks." Lake Region responded that it could not accommodate that request but was open to alternative work possibilities.

After a March neuropsychological re-evaluation, Dr. Bergloff found that Whitley was "performing within the high average range for overall intellectual abilities . . . [with] no cognitive impairments in any area." Dr. Bergloff recommended return to work on a part-time basis with hours gradually increasing. In April, Whitley told Dr. Lindholm she felt "back to normal," did not have headaches or attention span

problems, had completed eighty hours of Continuing Medical Education (CME), and was "very eager to get back to work and have some purpose in her life." In June 2012, Whitley provided Standard an Attending Physician Statement in which Dr. Lindholm noted Whitley's improved condition, stated no further treatment was planned, and recommended "a transitional return to work starting with [a] 4 hours/day limitation." Dr. Lindholm wrote to Lake Region that Whitley had "no physical limitations or restrictions in regard to work."

In July 2012, Standard asked Dr. Bradley Fancher, an independent consultant, to review Whitley's medical records. Evaluating Whitley's ability to return to work as a family practice physician, her board certified specialty, Dr. Fancher determined she could return to work, concluding that a gradual return to work was not "an imperative requirement." Standard advised Whitley it was discontinuing benefits effective July 31. In the lengthy August 5 letter, Standard explained that Lake Region "was not able to provide record of your professional service codes" documenting that sixty percent of Whitley's income was earned in an emergency medicine sub-specialty, and therefore her Own Occupation as defined in the Policy was "as broad as the scope of your [family] medicine license." The letter reviewed the medical records and opinions in some detail and concluded, "the records do not support that you have residual physical or cognitive limitations and restrictions that would preclude you from working with reasonable continuity in your Own Occupation at this time."

On August 23, Whitley appealed Standard's decision. She wrote: "I am improved; I am happy to be better. I do want to return to full-time work as an emergency medicine physician. I am not ready to return to work full-time yet." In support, Whitley submitted letters from Drs. Lindholm and Bergloff and speech-language pathologist Nan Kennelly opining that Whitley should not initially return to work full-time. Kennelly noted that Whitley could have "difficulty executing with [the] distraction, time pressure, interruptions and multi-tasking" of an emergency

room.  Dr. Bergloff reported that sustained activity increased Whitley's "pain symptoms."  Dr. Lindholm suggested a trial return to work, but noted that Whitley "has no physical limitations" and "[h]er cognitive abilities are back to baseline."

In considering Whitley's appeal, Standard consulted Dr. Thomas Morgan, a neurologist.  He reviewed all of Whitley's records and found that she "does not have any restrictions or limitations with respect to her work as a family practice physician in an emergency room setting . . . based on the nature of her mild concussion post-concussion syndrome and the normalization of her neuropsychological testing." Mark Williams, Ph.D., conducted an independent neuropsychological review of the claim at Standard's request.  In preparing an extensive report, Dr. Williams considered Whitley's medical records, spoke to Dr. Bergloff, and reviewed "actual raw test data" from Whitley's cognitive tests.  Explicitly considering "the unique demands of emergency room practice" as described by a vocational consultant, Dr. Williams found no "objective or even compelling subjective" indication that Whitley's "mental endurance" was not "intact," especially considering her 80 hours of continuing medical education and ability to read for four to five hours in a sitting.  Dr. Williams concluded, "based on my consideration of the full set of information that has been provided to me, it is my opinion that Dr. Bergloff's recommendations [of a gradual return to work] are overly restrictive." Drs. Morgan and Williams agreed that Whitley was able to work on a full-time basis as of July 31, 2012.  Dr. Greif again reviewed Whitley's claim at Standard's request.  She noted that Whitley's history of head injuries suggested "a return-to-work plan that involves monitoring adequacy of her work" but agreed that while a "gradual return would be ideal . . . it is reasonable to try a full-time return."

Whitley underwent left knee arthroscopy in November 2012 and right total knee arthroplasty the following month due to a fall that aggravated degenerative joint disease that pre-dated the auto accident.  Following the surgeries, Whitley markedly changed her disability claim.  In a December 4 letter to Standard, Whitley wrote that,

due to physical problems and constant pain, "I have begun to despair that I will ever be able to return to work and support myself again." In a January 16, 2013, letter to Standard, Dr. Lindholm wrote that Whitley's "disability is multifactorial and is a result of pre-existing spine and joint disease and the traumatic brain injury sustained in March 2011," and opined that Whitley "is permanently disabled and not able to pursue gainful employment." On January 26, Whitley wrote Standard explaining why extensive medical records supported her claim that she is disabled by "chronic pain."

In response, Standard asked Dr. Morgan to consider whether these additional reports affected his prior opinion that Whitley had the "ability to return to work as a Board Certified Family Practice Physician working in the Emergency Room setting." On February 19, Dr. Morgan submitted an Addendum report. He found Whitley's claim of pain and fatigue to be "complaints . . . of tolerance." Addressing Dr. Lindholm's January opinion, Dr. Morgan wrote: "It is understandable that Dr. Lindholm wants to advocate for her patient . . . based on pain tolerance but this does not restrict or limit her ability to work . . . . Whitley had a minor concussion at best, these conditions heal within days to weeks." Standard also asked Dr. Donald Lambe, an independent orthopedic surgeon, to consider Whitley's disability claim. In a lengthy report dated February 28, 2013, Dr. Lambe opined that Whitley "was able to work on a full-time basis from 7/31/12, up until the time of her left knee arthroscopy of 10/22/12, and her subsequent total knee of 12/11/12, and she will again be able to work full-time after her recuperation from the total knee arthroplasty as of 3/11/13, and beyond." He wrote: "From an orthopedic viewpoint her bilateral hip and knee conditions do not preclude the standing and walking required of an ER physician, nor does her degenerative disc disease preclude the other light physical demands of that profession."

On March 28, Standard affirmed its decision to discontinue Whitley's benefits. In a twenty-two-page letter to Whitley's counsel, Standard concluded:

- "[B]ecause we were unsure whether Dr. Whitley would be able to provide [CPT code information showing her Own Occupation was emergency medicine] during the independent review process, we conducted our review to include the physical demands and Material Duties of an[] Emergency Room Physician as well [as Family Practitioner]."

- When Whitley originally requested a review of the decision to close her claim, she stated she wanted to return to full time work but was not ready to do so. As the review process continued, Whitley indicated she may be unable to return to work, and Dr. Lindholm "stated she is totally disabled," in contradiction to Dr. Lindholm's statements before the claim was closed.

- "No specific ongoing cognitive deficits have been identified that would affect her ability to safely perform all of the Material Duties of her Own Occupation of Family Practitioner (or even an Emergency Room Physician . . .), either on a part time or on a full time basis."

- No "physical limitations or restrictions from her motor vehicle accident . . . would have precluded her from working on a full time basis with reasonable continuity as of July 31, 2012." While Whitley has ongoing complaints of pain from her orthopedic conditions, "our review of the medical records available and the opinions of the Physician Consultants does not find that her chronic pain or orthopedic conditions are significant enough to preclude work activities."

- "Because Dr. Whitley's limitations and restrictions prior to the claim closure on July 31, 2012, were not related to her knees, but instead due to her cognitive inefficiencies," any impairment due to knee surgeries after the claim was closed is not covered under the terms of the Policy.

This lawsuit followed. Whitley claims that Standard abused its discretion in determining that her Own Occupation was family medicine, rather than emergency medicine, and in discontinuing her long term disability benefits. The district court granted Whitley summary judgment, agreeing with both contentions. The court granted disability benefits from August 1, 2012, "to the present" and until Whitley is

no longer disabled from her Own Occupation as emergency medicine physician, and awarded her attorney's fees and costs in a stipulated amount.

## II. Discussion.

**A.** If an ERISA plan expressly grants discretionary authority to the plan administrator, as in this case, we review the administrator's benefits determination for abuse of discretion. Waldoch v. Medtronic, Inc., 757 F.3d 822, 829 (8th Cir. 2014). "Under the abuse of discretion standard of review, we must uphold a plan administrator's decision so long as it is based on a reasonable interpretation of the Plan and is supported by substantial evidence. A decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision. We review [the] final claims decision, not the initial denial letter, to ensure development of a complete record." Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps., No. 14-3589, slip op. at 9, --- F.3d ---- (8th Cir. Jan. 29, 2016) (citations and quotations omitted).

When the plan administrator is an insurer that is responsible for paying benefit claims, such as Standard, it has a financial conflict of interest that a reviewing court must take into account in determining whether the administrator, "substantively or procedurally, has abused [its] discretion." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008). Citing nothing more than Standard's "pecuniary interest in denying claims," Whitley urges us to "conduct a more searching review of Standard's decision to terminate Whitley's claim." But altering the standard of review solely for this reason would be contrary to the case-specific test adopted in Glenn. An insurer's structural conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." Id. at 117, and at 126 (Kennedy, J., concurring). Here, Whitley presented no evidence that Standard's thorough claims review process was biased, and

the record established that the medical professionals who peer reviewed Whitley's claim at Standard's request were independent consultants, not Standard employees, and that their compensation was not based on their findings. See Carrow v. Standard Ins. Co., 664 F.3d 1254, 1259 (8th Cir. 2012). In these circumstances, the financial conflict factor was reduced "to the vanishing point."

**B.** Standard's decision to discontinue LTD benefits effective July 31, 2012 -- the only decision here at issue -- was based on its determination that the disabling cognitive impairments suffered by Whitley in the February 2011 car accident had improved to the point that she could return full-time to her Own Occupation. The district court first ruled that Standard abused its discretion in determining that Whitley's Own Occupation was family medicine, not emergency medicine. Though the parties argue this point at length on appeal, we conclude it is almost entirely a straw man. Standard's initial decision was based in part on a determination that Whitley's Own Occupation was her board-certified specialty as a family medicine physician. But the final decision expressly stated that Standard "conducted our review to include the physical demands and Material Duties of an[] Emergency Room Physician as well [as Family Practitioner]." Because exhaustion of an ERISA plan's appeal procedures serves many important purposes, "the reviewing court reviews the claim administrator's final decision to deny a claim, rather than the initial denial that was reconsidered during the internal appeal." Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770-71 (8th Cir. 2001).

Although it failed to acknowledge this principle, the district court went on to conclude that "Standard's consulting physician reports contain only unsupported and conclusory assertions regarding Whitley's ability to generally perform work in an emergency setting." That issue is part of the judicial review of Standard's final decision, but the district court's conclusion is inconsistent with abuse of discretion review. During the appeal process, all of Standard's consulting physicians addressed this issue. Dr. Morgan found that Whitley "does not have any restrictions or

-10-

limitations with respect to her work as a family practice physician in an emergency room setting . . . based on the nature of her mild concussion post-concussion syndrome and the normalization of her neuropsychological testing." Dr. Williams considered "the unique demands of emergency room practice" as described by a vocational consultant and opined that a gradual return to work was "overly restrictive." Dr. Greif noted that Whitley would need to be monitored when first working in an emergency room but opined that "it is reasonable to try a full-time return [to work]." Dr. Fancher was consulted again and noted "that in emergency medicine more than other disciplines, one's work is more closely scrutinized." Dr. Lambe opined that Whitley's hip, knee, and degenerative disc disease "do not preclude the standing and walking required of an ER physician," nor the other light physical demands of that profession. The administrative record more than adequately supports the manner in which Standard addressed the Own Occupation issue in its final decision.

**C.** Turning to the main issue, the district court concluded that Standard abused its discretion in discontinuing benefits because its "consulting physicians totally dismiss, without support, the recommendation of Whitley's treating physicians that she should return to work on a part-time basis, with supervision, to determine whether or not she can perform her job duties." That is the pivotal issue, and it is not free from doubt. When she appealed Standard's adverse initial decision, Whitley wanted to return to work and felt she had recovered the cognitive ability to perform her work as an emergency room physician, but wished to return to Lake Region on a part-time basis. Her treating physicians all agreed she had recovered her cognitive and other abilities but opined that she should initially return to work on a part-time basis. Standard's independent medical experts agreed that Whitley had regained the ability to perform the material duties of her Own Occupation but disagreed that a part-time return to work was necessary. Lake Region brought this issue to the forefront when it could not (or would not) accommodate a part-time return to work on the terms Whitley requested.

-11-

On this record, we conclude that substantial evidence supported Standard's decision to discontinue benefits because Whitley had recovered the ability to return to her Own Occupation on a full-time basis. Standard provided Whitley the "full and fair review" ERISA required before denying her appeal from the initial decision to discontinue LTD benefits. See Prezioso v. Prudential Ins. Co. of Am., 748 F.3d 797, 805-06 (8th Cir. 2014). At the end of this process, Standard was faced with conflicting expert opinions on an issue the objective medical evidence could not definitively resolve -- whether Whitley had recovered from the car accident sufficiently to work on a full-time basis, or only on a part-time basis. In resolving this conflict, Standard was not required to give special deference to the opinions of Whitley's treating physicians. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003).

Both the treating physicians and the consulting physicians agreed that Whitley could return to work on July 31, 2012, but disagreed whether she was able to return on a full-time basis initially. The clinical neuropsychologist, Dr. Williams, reviewed Whitley's medical records, spoke with Dr. Bergloff, and reviewed "actual raw test data" from her cognitive tests. The neurologist, Dr. Morgan, concluded that Whitley's complaints of pain and mental fatigue were "complaints . . . of tolerance," not objective evidence. The orthopedic surgeon, Dr. Lambe, considered the effects of knee surgeries and degenerative disc disease and found that Whitley could withstand the "light physical demands" of work as an emergency room physician. Dr. Greif recommended a gradual return to work but agreed "it is reasonable to try a full-time return." All the independent consultants expressly considered the contrary recommendations of Whitley's treating physicians and opined that Whitley was able to go back to work full-time, even in the somewhat more demanding emergency room environment.

"When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has

discretion to deny benefits unless the record does not support denial." <u>Johnson v. Metro. Life Ins. Co.</u>, 437 F.3d 809, 814 (8th Cir. 2006); <u>see also</u> <u>Carrow</u>, 664 F.3d at 1259; <u>Bolling v. Eli Lilly & Co.</u>, 990 F.2d 1028, 1029-30 (8th Cir. 1993). Only when the evidence relied on is "overwhelmed by contrary evidence" may the court find an abuse of discretion. <u>Coker v. Metro. Life Ins. Co.</u>, 281 F.3d 793, 799 (8th Cir. 2002) (quotation omitted). In view of the conflicting opinions contained in the voluminous administrative record, Standard's decision to deny Whitley's claim based on the opinions of its independent consultants was not an abuse of discretion. <u>Hunt v. Metro. Life Ins. Co.</u>, 425 F.3d 489, 490-91 (8th Cir. 2005) (per curiam).

### III. Conclusion.

Paragraphs 1-4 and 7-8 of the district court's Amended Judgment in a Civil Case dated February 27, 2015, are reversed and the case is remanded for entry of an amended final judgment consistent with this opinion. <u>See</u> <u>Johnson v. United of Omaha Life Ins. Co.</u>, 775 F.3d 983, 989 (8th Cir. 2014).

_____