# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-1714

_____

Lisa Jones

*Plaintiff - Appellant*

v.

Aetna Life Insurance Company; The Boeing Company Employee Health and
Welfare Benefit Plan; Employee Benefit Plans Committee of The Boeing
Company; The Boeing Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 13, 2016
Filed: May 8, 2017

_____

Before WOLLMAN, SMITH,[1] and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Lisa E. Jones submitted a claim for disability benefits. Her plan administrator
denied it. She sued under the Employee Retirement Income Security Act (ERISA)

---

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States
Court of Appeals for the Eighth Circuit on March 11, 2017.

for denial of benefits and breach of fiduciary duty. The district court dismissed the fiduciary claim as "duplicative" of the denial-of-benefits claim. It then granted summary judgment against Jones on the denial-of-benefits claim. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

I.

Jones worked for The Boeing Company as a business and planning analyst. She was covered by Boeing's employee welfare benefit plan. The plan provided short-term (up-to-26-weeks) disability benefits funded by Boeing and administered by Aetna Life Insurance Company. It also provided long-term disability benefits funded and administered by Aetna.

On October 16, 2013, Jones stopped working and submitted a claim for short-term benefits. On October 21, rheumatologist Dr. Francisco J. Garriga submitted an "Attending Physician Statement" with a primary diagnosis of "ankylosing spondylitis" (inflammatory arthritis primarily affecting the spine), and a secondary diagnosis of "migraines." Dr. Garriga first stated that Jones could not work through November 4. On October 23, Aetna approved her claim for short-term benefits effective October 24. Dr. Garriga then extended Jones's unable-to-work dates many times. Aetna extended her benefits and required updates from Dr. Garriga. On January 30, 2014, Aetna made what would be its final extension—through February 17.

On February 26, Dr. Garriga extended Jones's unable-to-work date to April 28. At Aetna's request, he submitted a "Capabilities and Limitations" worksheet on March 17. It was mostly blank because "no formal testing has been done – would need PT appointment to accurately assess." On April 11, chiropractor Dr. Brian Dent submitted a "Capabilities and Limitations" worksheet stating that Jones was limited to working two to four hours per day pending flare-ups.

-2-

On April 16, Aetna told Jones that her submitted information did not sufficiently document a level of impairment preventing her from working. Aetna requested more information. Aetna then sent Jones's file to Dr. Kia Swan-Moore for review. Dr. Swan-Moore reviewed the medical records and spoke to Dr. Garriga, who said "there is no physical clinical reason [Jones] cannot work however [Jones] continues to tell him that the pain is so intense she could not concentrate." Dr. Swan-Moore also tried, unsuccessfully, to contact Dr. Mahendra Gunapooti, a pain management specialist who Jones said had treated her. On April 24, Dr. Swan-Moore concluded, based on the medical records, Jones could work an eight-hour day for the period of February 17 through May 30 (with unlimited sitting, standing, and walking, and with some limits on pushing, pulling, and carrying). On April 28, Aetna essentially restated Dr. Swan-Moore's conclusions and told Jones her benefits were terminated effective February 17. The same day, Dr. Gunapooti sent records to Aetna. Those records showed that Jones reported chronic pain, was on numerous medications (including painkillers), and received epidurals. In light of Dr. Gunapooti's records, Dr. Swan-Moore reviewed her determination and tried to contact him (but was again unsuccessful). Dr. Swan-Moore reaffirmed her determination. Aetna reaffirmed its denial.

On July 8, Jones submitted to a functional capacity evaluation by physical therapist Kevin J. Wilhite. He said Jones "demonstrated lifting performance that would place her in the Sedentary Physical Demand Category," but he was "ultimately Unable to Classify her ability of work over an 8 hour work day due to her inability to complete the aerobic capacity testing" (which he did not conduct "due to safety concerns of using a treadmill with her gait performance and use of the cane"). He said, based on her self-reported pain, he "would not expect her to tolerate any activity over 2 hours," and noted that "Productive Sedentary work for an 8 hour work day would not be expected based on this date's performance." Wilhite did say that Jones "demonstrated inconsistent performance," including "movement and muscle recruitment patterns that were inconsistent when aware and unaware of observation."

Aetna concluded that Wilhite's report did not support a disability finding, especially due to Jones's reported inconsistent performance.

On July 17, Jones appealed the denial of benefits. She submitted Wilhite's report and a newer "Attending Physician Statement" from Dr. Garriga saying that her inability to work was "ongoing" and she "cannot remain standing for over 2 hrs." Aetna sent Jones's medical documentation to Dr. Daniel Gerstenblitt to see if Jones qualified as disabled between February 18 and April 16. Dr. Gerstenblitt tried to call Dr. Garriga seven times, leaving messages that were not returned. Dr. Gerstenblitt stated that Jones "appears to have chronic neck and back pain," determined that her "functional capacity evaluation was an invalid study and self-limited," and concluded that "there is absolutely no reason that she is incapable for performing in at least a sedentary position." Aetna denied Jones's appeal on October 8. On January 19, 2015, Jones asked Aetna to place in her file a letter from the Social Security Administration granting her disability benefits.

In February 2015, Jones sued Aetna, the "Boeing Employee Health and Welfare Plan," and the "Employee Benefit Plans Committee, the Boeing Company." Her amended complaint had two counts. Count I alleged that Aetna denied her short- and long-term disability benefits in violation of 29 U.S.C. § 1132(a)(1)(B). Count II alleged Aetna breached its fiduciary duty to her as a participant by (among other things) failing to obtain medical records, failing to tell her where to send evidence of disability, and using claims examiners with conflicts of interest, all in violation of § 1132(a)(3). The district court dismissed Count II as "duplicative" of Count I, and denied Jones's motion for discovery on the fiduciary-duty claim. It then granted summary judgment to Aetna on Count I, determining Aetna did not abuse its discretion in denying Jones's claim. It also granted Aetna's motion to strike documents Jones attached to her memorandum opposing summary judgment.

-4-

II.

Jones argues that the district court erred in dismissing Count II. This court reviews the district court's dismissal de novo. ***Wilson v. Ark. Dep't of Human Servs.***, 850 F.3d 368, 371 (8th Cir. 2017).

Two of ERISA's theories of recovery are relevant here. First, under § 1132(a)(1)(B), a plan participant or beneficiary may sue "to recover benefits due to him under the terms of his plan." Second, under § 1132(a)(3), a participant or beneficiary may sue "to obtain other appropriate equitable relief . . . to enforce any provisions of this subchapter"—including provisions of the subchapter that impose liability on fiduciaries[2] that breach their statutory duty to exercise a "prudent man standard of care." *See* **§§ 1104(a)**, **1109(a)**; ***Varity Corp. v. Howe***, 516 U.S. 489, 507-15 (1996).

A.

This court's cases conflict about whether a participant or beneficiary bringing a § 1132(a)(1)(B) claim "to recover benefits due to him under the terms of his plan" may also bring a § 1132(a)(3) claim to obtain benefits (as "other appropriate equitable relief" for a breach of fiduciary duty by a plan administrator).

In *Conley v. Pitney Bowes*, 176 F.3d 1044 (8th Cir. 1999), a beneficiary sued under (a)(1)(B) for benefits. He also sued under (a)(3) for breach of fiduciary duty. He "described the alleged fiduciary violations as failure to provide him with proper

---

[2]ERISA defines fiduciaries to include any person exercising "discretionary authority or discretionary control respecting management of [a] plan" and any person with "discretionary authority or discretionary responsibility in the administration of [a] plan." **29 U.S.C. § 1002(21)(A)**.

notice of his opportunity to appeal, failure to maintain a complete administrative record, and failure to conduct a full and impartial investigation of his condition." *Id.* at 1047. He "sought equitable relief in the form of a restoration to him of past and future additional long-term disability benefits." *Id.* The district court dismissed the (a)(3) claim. This court affirmed, explaining that "where a plaintiff is provided adequate relief by the right to bring a claim for benefits under § 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B)." *Id.* (internal quotation marks omitted). It held that the beneficiary "has a claim for benefits under § 1132(a)(1)(B) and therefore may not seek the same benefits in the form of equitable relief under § 1132(a)(3)(B)." *Id.*

More recently, in *Silva v. Metropolitan Life Insurance Co.*, 762 F.3d 711 (8th Cir. 2014), a beneficiary sued under (a)(1)(B) for benefits from a valid insurance policy. He also sued under (a)(3), arguing that even if the policy was never validly approved (and thus never took effect), the employer and insurer still owed benefits because of fiduciary misconduct in failing to obtain approval. *Id.* at 727-28. Both counts sought the same relief—"payment of benefits that were seemingly owed under the Plan [in the amount of] $429,000." *See id.* at 724, 728 n.12. The court refused to dismiss the (a)(3) claim, holding the beneficiary "is allowed to assert liability under the two subsections of 29 U.S.C. § 1132 at issue in this case." *Id.* at 728.

*Silva* acknowledged that earlier Eighth Circuit cases suggest that a plan beneficiary cannot bring both (a)(1)(B) and (a)(3) claims. *Id.* at 726, *citing **Pilger v. Sweeney**,* 725 F.3d 922, 927 (8th Cir. 2013). The earlier cases rely on the Supreme Court's 1996 *Varity* decision—specifically, its statement that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" 516 U.S. at 515. *Silva* determined that *Varity* and the earlier Eighth Circuit cases do not "stand for the proposition that [a beneficiary] may only plead one cause of action." *Silva*, 762 F.3d at 726. Instead, *Varity* and the earlier Eighth

-6-

Circuit cases more narrowly "prohibit duplicate *recoveries* when a more specific section of the statute, such as § 1132(a)(1)(B), provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, § 1132(a)(3)." *Silva*, 762 F.3d at 726.

*Silva* buttressed its interpretation of *Varity* and the earlier Eighth Circuit cases with "further support" from *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). *Silva*, 762 F.3d at 726. *Amara* reviewed an order for plan reformation under (a)(1)(B). The Court held that (a)(1)(B) does not authorize that type of relief, but a different statutory basis—(a)(3), which the district court had considered and rejected—does authorize that relief. *Amara*, 563 U.S. at 438, 442. According to *Silva*, the *Amara* "Court addressed the issue in terms of available relief and did not say that plaintiffs would be barred from initially bringing a claim under the § 1132(a)(3) catchall provision simply because they had already brought a claim under the more specific portion of the statute, § 1132(a)(1)(B)." *Silva*, 762 F.3d at 727.

*Silva* acknowledged that "this interpretation of *Varity* may seem to be at odds with earlier Eighth Circuit cases," but distinguished those earlier cases "based on the stage of litigation the court was reviewing." *Silva*, 762 F.3d at 727. The earlier Eighth Circuit cases, *Silva* said, were all summary judgments, where "a court is better equipped to assess the likelihood for duplicate recovery, analyze the overlap between claims, and determine whether one claim alone will provide the plaintiff with 'adequate relief.'" *Id*. *Silva*, on the other hand, was a motion-to-dismiss case, where "it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief." *Id.*

*Silva*'s attempt to distinguish previous cases based on the stage of litigation falters because *Conley* dismissed a § 1132(a)(3) claim on a motion to dismiss, not at

summary judgment. *Silva* did not cite *Conley*. Neither *Silva* nor any other case from this court explicitly holds that *Conley* is no longer good law.

This court must resolve the intracircuit conflict between *Conley*'s rule—an (a)(1)(B) claimant may not seek relief under (a)(3)—and *Silva*'s rule—an (a)(1)(B) claimant may seek relief under (a)(3). Generally, in the case of an intracircuit conflict, the earliest opinion controls. **Mader v. United States**, 654 F.3d 794, 800 (8th Cir. 2011) (en banc); **T.L. ex rel. Ingram v. United States**, 443 F.3d 956, 960 (8th Cir. 2006). However, "a panel may depart from circuit precedent based on an intervening opinion of the Supreme Court that undermines the prior precedent." **T.L. ex rel. Ingram**, 443 F.3d at 960. The *Silva* panel's departure from prior precedent followed the intervening *Amara* opinion that undermined the prior panels' interpretations of *Varity*. Indeed, *Amara* implicitly determined that seeking relief under (a)(1)(B) does not preclude seeking relief under (a)(3). *See Amara*, 563 U.S. at 438; **Moyle v. Liberty Mut. Ret. Benefit Plan**, 823 F.3d 948, 960-62 (9th Cir. 2016) (agreeing with *Silva*'s interpretation of *Amara*). Although *Silva* did not recognize *Conley*, it did properly depart from it based on *Amara*. *Silva* controls.

B.

Aetna tries to distinguish *Silva* by limiting it to its facts, essentially arguing it applies only where the (a)(3) claim asserts that a plan was never validly approved. But *Silva*'s rule is broader than that: so long as two claims "assert different theories of liability," plan beneficiaries "may plead both." **Silva**, 762 F.3d at 728 & n.12.

Here, Jones asserts different theories of liability. Like *Silva*, the two counts seek functionally identical relief—"an amount in excess of one million dollars," the benefits Jones says Aetna denied her. But despite the similarity of the relief, Counts I and II allege distinct theories of liability. Count I asserts that Aetna denied her benefits due under the plan. Count II asserts that Aetna, among other things, used

claims examiners with conflicts of interest and denied short-term benefits solely to disqualify long-term claims. Count II's theory of liability is that Aetna used a claims-handling process that breached its fiduciary duties, not that Aetna denied her benefits due. True, Jones argues that this process caused her to be denied benefits she was due. But Aetna's alleged liability under (a)(3) flows from the process, not the denial of benefits itself. A plan administrator is not liable under (a)(1)(B) for administering a claims process contrary to its fiduciary obligation to carry out its duties solely for participants and beneficiaries. Even if an administrator made a decision with procedural irregularities that "serious[ly] breach" its duties to its beneficiary, it is not necessarily liable under (a)(1)(B); instead, the serious breach prompts more searching review of the denial-of-benefits claim. *See **Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.***, 812 F.3d 628, 631 (8th Cir. 2016); ***Waldoch v. Medtronic, Inc.***, 757 F.3d 822, 830 (8th Cir. 2014) (explaining that a "serious breach of the plan trustee's fiduciary duty to the plan beneficiary" will either "alter the standard of review or affect our review under the abuse-of-discretion standard").

Despite Aetna's attempts to characterize the two claims as duplicative because both allege "improper claims processing," the two claims assert different theories of liability. The district court erred in dismissing Jones's Count II (a)(3) claim on that basis. Its dismissal of Count II is reversed.[3]

### III.

Jones contends that the district court erred in granting summary judgment on her Count I (a)(1)(B) denial-of-benefits claim. According to her, she is entitled to

---

[3]Before the district court, Jones moved for discovery to support her Count II claim. The district court denied that motion "in light of its dismissal of Count II." Since this court reverses the basis for the denial, on remand the district court should reconsider the discovery motion.

both short-term and long-term disability benefits under the plan. The parties agree that the Summary Plan Description gives Aetna discretionary authority to interpret the plan. "When a plan grants an administrator this type of discretion, the district court reviews the administrator's construction of the plan terms for an abuse of discretion." *Silva*, 762 F.3d at 717 (internal quotation mark omitted). Under abuse-of-discretion review, "[a]n administrator's decision is upheld if it is reasonable, that is, supported by substantial evidence"—meaning "more than a scintilla but less than a preponderance." *Id. See also King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-1000 (8th Cir. 2005) (en banc); *Tillery v. Hoffman Enclosures, Inc.*, 280 F.3d 1192, 1199 (8th Cir. 2002). If an administrator also funds the benefits it administers—like Aetna does for Jones's long-term benefits—the district court "should consider that conflict as a factor" in determining whether the administrator abused its discretion. *Silva*, 762 F.3d at 718. *See also Whitley v. Standard Ins. Co.*, 815 F.3d 1134, 1140 (8th Cir. 2016). This court reviews de novo the grant of summary judgment, viewing the evidence most favorably to Jones. *Silva*, 762 F.3d at 718.

## A.

In her "Statement of the Issues," Jones frames her challenge to the district court's summary judgment grant narrowly: "Whether the trial court erred in granting summary judgment because the trial court failed to consider the administrative record in that Aetna's own doctor found Jones had a functional impairment in evaluating her disability." Taking the issue as defined by Jones, she does not show that Aetna's decision was unreasonable. Yes, Aetna's reviewing doctor, Dr. Swan-Moore, found that "functional impairment is supported" for February 17 through May 20, 2014. But the functional impairment found by Dr. Swan-Moore was limited: "Based on an 8 hour day; sitting, standing, and walking would be unlimited. She could push, pull, and carry no more than 10 pounds at any time. There are no restrictions to emotional control, focus or concentration as well as cognition." By the "disabled" definition in

the Summary Plan Description, you are not disabled due to a "functional impairment"; rather, you are disabled if an illness "prevents you from performing the material duties of your own occupation or other appropriate work the Company makes available." Dr. Swan-Moore's determination that Jones had some functional impairment does not render Aetna's no-disability determination unreasonable.

B.

Jones makes other arguments, none of which shows that Aetna's denial of benefits was unreasonable. First, she asserts that Dr. Swan-Moore never considered she suffered from migraines. Jones is incorrect. Dr. Swan-Moore's review noted twice that Dr. Garriga diagnosed her as suffering from migraines. Dr. Swan-Moore also discussed Jones's condition with Dr. Garriga, who said "there is no physical clinical reason [Jones] cannot work." Aetna reasonably relied on Dr. Swan-Moore's review, which "accurately represent[ed] [Jones's] medical record and adequately address[ed] the evidence supporting her claim for disability." *Midgett v. Washington Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 898 (8th Cir. 2009). Second, she argues that Aetna's Summary Plan Description (which the district court used to determine her benefits) has two flaws: (1) it was not authenticated, and (2) there is no way to know whether the underlying plan contradicts the Summary Plan Description. The first premise fails because the plan was authenticated by affidavit. Her second premise fails because courts frequently look to summary plan descriptions in determining benefits. *See generally Jobe v. Med. Life Ins. Co.*, 598 F.3d 478, 481-86 (8th Cir. 2010). It is true that since the summary plan description states that the plan governs in cases of a conflict between the summary and the plan, the plan governs if there is a conflict. *See id.* at 485-86. But the underlying plan matters only *if there is a conflict*. Jones presents no evidence of a conflict and does not argue that she requested discovery of the underlying plan. Third, she contends—without citing any evidence—that Aetna denied her short-term benefits in order to avoid having to later pay long-term benefits. Even considering this potential conflict in determining

-11-

whether Aetna abused its discretion, Jones has not shown that Aetna's determination was unreasonable.

## C.

Jones contends that the district court erred in striking evidence she submitted to oppose summary judgment. "Determinations as to the admissibility of evidence lie within the sound discretion of the district court, and we review those determinations under an abuse of discretion standard, even at summary judgment." *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 818 (8th Cir. 2010). Jones submitted a "Supplemental Administrative Record," which included a letter from the Social Security Administration granting disability benefits, a letter from Jones to Aetna asking for inclusion of the SSA letter in the administrative record, and a letter from Aetna acknowledging receipt. Jones sent the letter to Aetna on January 19, 2015—over three months after Aetna denied her appeal.

When applying abuse-of-discretion review, a court reviewing a denial of benefits should not consider information that was not before the plan administrator: "Review of a plan administrator's discretionary decision must be limited to the administrative record . . . ." *Ingram*, 812 F.3d at 634. Since the "Supplemental Administrative Record" materials were not before the plan administrator when it made its discretionary determination, the district court correctly struck those materials.

## D.

In her reply brief, Jones makes additional arguments for reversal of summary judgment. This court generally does not consider arguments raised for the first time in a reply brief, although it may if the new arguments supplement those raised in an initial brief. *Barham v. Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir.

-12-

2006). These arguments assert errors not raised in the initial brief. Jones offers no reason for not raising them sooner. This court declines to consider the new arguments. The district court's grant of summary judgment on Count I is affirmed.

* * * * * * *


The judgment of the district court is affirmed in part, reversed in part, and the case remanded for proceedings consistent with this opinion.

_____